# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TARA YANTIS.                                          Case No. 1:11-cv-35

      Plaintiff,                                  Judge Timothy S. Black

vs.

STATE OF OHIO, SOUTHERN OHIO
CORRECTIONAL FACILITY, *et al.*,

      Defendants.

## ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT (DOC. 10)

This civil case is before the Court on the Motion for Summary Judgment of

Defendants State of Ohio Southern Ohio Correctional Facility (SOCF) and Donald

Morgan (Doc. 10) and the parties' responsive memoranda (Docs. 15 & 17).

For the reasons stated here, the Motion is **GRANTED**.

## I.      BACKGROUND

### A.      Undisputed Facts

1. Plaintiff Tara Yantis was hired as a Corrections Officer at the Ohio Department of Rehabilitation and Correction (ODRC) at SOCF on January 3, 2006. (Doc. 8 at 25; Doc. 10 at ¶ 1).

2. Yantis received and signed for ODRC's Standards of Employee Conduct on November 1, 2009. (Doc. 8 at 17 and 28; Doc. 8, Ex. C; Doc. 10 at ¶3).

3. ODRC Rule 46(B) and (D) prohibit unauthorized personal relationships, or residing with any individuals within six months following their release from custody or supervision of ODRC. (Doc. 8, Ex. D at 22).

4.      Corrections officers who violate ODRC Rule 46 are subject to discipline up to and including termination for the first offense. (Doc. 8, Ex. D at ¶ 46(B) and (D)).

5.      During the early months of 2010, Yantis worked the day shift on the J-4 North section of the prison, where inmate John Dean worked as a porter under her supervision.  (Doc. 8 at 25; Doc. 10 at ¶ 1).

6.      Inmate Dean was released from prison on February 13, 2010.  (Doc. 10 at ¶ 6).

7.      Sometime in February or March 2010, Yantis encountered Dean at a gas station two miles from her home.  Yantis offered to have Dean stay on her property. (Doc 8 at 24-25; Doc. 10 at ¶ 7).

8.      Dean stayed on Yantis's property in a camper outsider her home for two days.  (Doc 8 at 27; Doc. 10 at ¶ 8).

9.      Prior to the investigation into her actions, Yantis did not inform SOCF personnel that she had any contact with Dean or that he had stayed on her property.   Yantis did not complete a staff nexus form. (Doc. 9 at 19-21, 27-30).

10.     In March 2010, Captain Bell and Lieutenant Joseph counseled Yantis for allowing an inmate access to her personal belongings and to take a doughnut from her lunch box. (Doc. 8 at 46-48).

11.     In early April, Yantis's ex-husband informed prison officials that Dean had stayed on her property.  Warden Morgan contacted Ohio State Highway Patrol Trooper Ball to investigate.  (Doc. 8 at 38; Doc. 10, Ex. 1 at ¶ 7).

12.     On April 8, 2010, Yantis was interviewed by Trooper Ball in relation to her contact with Dean.  Ball determined that there was no evidence of criminal activity occurring on state property and reported to Warden Morgan that the allegations indicated this was an administrative matter.  (Doc. 8, Ex. G).

13.     Yantis was placed on administrative leave on April 8, 2010 following Ball's interview. (Doc. 8, Ex. N at 8).

14.    On April 13, 2010, Yantis filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC)/Ohio Civil Rights Commission (OCRC). (Doc. 8, Ex. P).

15.    On April 15, 2010, Yantis was interviewed by SOCF Investigator David See. (Doc. 8, Ex. F). Yantis was represented at the interview by her attorney, James Banks, and assisted by a union representative. (Doc. 8 at 30).

16.    Yantis admitted to Investigator See that Dean stayed on her property. On advice of counsel, she then declined to answer further questions. (Doc. 8 at 30; Doc. 8 , Ex. F).

17.    Investigator See informed Yantis that failing to cooperate in an investigation is a separate ODRC rule violation. (Doc. 8 at 34-35).

18.    ODRC Rule 24 prohibits employees from failing to cooperate in an official investigation or inquiry. (Doc. 8, Ex. D). Corrections officers who violate ODRC Rule 24 are subject to discipline up to and including termination for the first offense. (*Id*. at 24).

19.    On June 14, 2010, Lieutenant Nate Miller met with Yantis to review her June 2009 – June 2010 performance evaluation wherein Yantis received four "Does Not Meet" ratings out of twelve performance dimensions with an overall rating of "Unsatisfactory."   Miller was not Yantis's supervisor.  (Doc. 8 at. 41-42, 44-45; Doc. 8,  Ex. K).

20.    Yantis was terminated effective June 17, 2010. (Doc. 8, Ex. J).

21.    Yantis filed her second EEOC/OCRC charge on July 7, 2010. (Doc. 8, Ex. O).

**B.    Procedural History**

Plaintiff filed her first EEOC Complaint on April 13, 2010, alleging that SOCF

Warden Donald Morgan had discriminated against her when he threatened disciplinary

action on April 8, 2010, asserting that male corrections officers did not receive similar

discipline.  (*See* Doc. 1, Ex. A).  Yantis was subsequently terminated on June 17, 2010.

(*See* Doc. 1, Ex. B.).  She filed a second EEOC complaint on July 12, 2010, alleging that

she was terminated on the basis of gender discrimination and in retaliation for filing her

first EEOC complaint.  (*Id.*).  On October 21, 2010, the EEOC denied Plaintiff's claims

and notified Yantis of her right to sue within 90 days.  (*See* Doc. 1, Ex. C).

Plaintiff filed her Complaint (Doc. 1) on January 17, 2011 against SOCF and

Warden Donald Morgan in both his official and individual capacities.  Yantis alleges

five counts: (1) gender discrimination in violation of Title VII, 42 U.S. C. § 2000e, *et*

*seq*.; (2) retaliation for engaging in protected activity, in violation of Title VII, 42 U.S.C.

§ 2000e *et seq*.; (3) gender discrimination in the form of a hostile workplace, in violation

of Title VII, 42 U.S.C. § 2000e, *et seq*.; (4) gender discrimination in violation of Ohio

law, Ohio Rev. Code § 4112; and (5) retaliation for engaging in protected activity in

violation of Ohio law, Ohio Rev. Code § 4112.   (Doc. 1 at ¶¶ 9, 20).  Plaintiff seeks

damages in excess of $75,000, injunctive relief, and attorneys' fees and costs.  (*Id*. at 9).

On March 1, 2012, Defendants filed a Motion for Summary Judgment (Doc. 10);

Plaintiff subsequently filed a Memorandum in Opposition (Doc. 15) and Defendants filed

a Reply (Doc. 17).  The matter is now fully briefed and ripe for review.

## II.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts that, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.

## III.    ANALYSIS

Defendants seek summary judgment on Plaintiff's state law claims on the basis of sovereign immunity.  Defendants also seek summary judgment on the merits of Plaintiff's Title VII claims for (1) gender discrimination; (2) hostile work environment; and (3) unlawful retaliation.  (Doc. 10 at 1).

## A.    Immunity

Plaintiff brings claims against Defendant SOCF and against Defendant Morgan acting in both his official and individual capacities under Ohio Rev. Code. § 4112, which prohibits discrimination on the basis of gender.  Claims against both SOCF and Defendant Morgan acting in his official capacity are akin to claims against the state. *Printz v. United States*, 521 U.S. 898, 930-931 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Eleventh Amendment to the United States Constitution provides the states with a sovereign immunity from civil claims: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign States."  U.S. Const. amend. XI.  Beyond the literal text of the Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens."  *Edelman v. Jordan*, 415 U.S. 651, 622-23 (1974).  However, Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of § 5 of the Fourteenth Amendment.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).  The Defendants do not dispute that Title VII claims fall within this exception to sovereign immunity.  However, Defendants assert that they are entitled to sovereign immunity with regard to Plaintiff's state law claims.  (Doc. 10 at 22).

Ohio has waived its right to sovereign immunity only with respect to the Court of Claims and has not consented to suit by its citizens in federal court.  *See Manning v. Ohio State Library Bd.*, 577 N.E.2d 650, 654 (Ohio 1991).  Plaintiff's state law claims against SOCF and Defendant Morgan in his official capacity are therefore barred.

Plaintiff also brings claims arising under Title VII, 42 U.S.C. § 2000e *et seq*. against Defendant Morgan in his individual capacity.  However, an individual supervisor may not be held personally liable under Title VII.  *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405.  Therefore, Defendant Morgan is granted summary judgment on Plaintiff's Title VII claims against him in his individual capacity.

## B.      Plaintiff's Title VII Claims

Each of Plaintiff's claims is evaluated under the three-part burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1]  Under the first step, the plaintiff bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence.  *See McDonnell Douglas,* 411 at 802; *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).  By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her.  *EEOC v. Avery Dennison Corp.*, 104 F.3d 838, 861 (6th Cir. 1997).

---

[1] *See Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) (Title VII discrimination claims); *Barrett v. Whirlpool Corp.,* 556 F.3d 502, 515 (6th Cir. 2009) (Title VII hostile work place claims)*; EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997) (Title VII retaliation claims).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendants to articulate some legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802. If the defendants meet this burden, then the presumption created from the *prima facie* case drops out and plaintiff has "an opportunity to prove . . . that the proffered reasons were not the true reason for the employment decision, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 248 (1981).

"On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). While the burden of production may shift during the stages of the inquiry, the burden of persuasion remains with the Plaintiff throughout the analysis. *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007*)*.

### 1. Gender discrimination claims

#### a. *Prima Facie* Case

Plaintiff argues that both her June 2010 performance evaluation and her termination resulted from unlawful gender discrimination. To establish a *prima facie* case of gender discrimination, Plaintiff must prove: (1) she was female; (2) she was qualified for the job she held; (3) she suffered an adverse employment action; and (4) she was replaced by a male employee or was treated differently than similarly situated male employees. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996).

Defendants do not dispute that Yantis is female or that she was qualified for the job. The parties therefore focus their arguments on whether Plaintiff suffered adverse employment actions or was treated differently than similarly situated male employees. (Doc. 10 at 8).

Plaintiff argues that her June 2010 employment evaluation constituted an adverse employment action. Under Sixth Circuit precedent, negative performance evaluations are generally not considered adverse employment actions unless they adversely impact wages or salaries. *See Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662-63 (6th Cir. 1999); *see also Tuttle v. Metro Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007). Plaintiff argues that the fact that she was terminated a mere three days after receiving her negative employment evaluation demonstrates its adverse effects on her job. However, the record is devoid of any evidence concerning how employment evaluations are used in termination decisions, and the Court is unable to conclude, on temporal proximity alone, that her evaluation led to her termination. Nevertheless, it is undisputed that Plaintiff's termination constituted an adverse employment action, and Yantis has therefore satisfied the third prong of the *prima facie* test.

With respect to the fourth prong of the *prima facie* test, Defendants argue that Plaintiff cannot establish that she was treated differently than male employees because she has no similarly situated comparators. (Doc. 10 at 13). To show than an employee is an applicable comparator, Plaintiff must demonstrate that they are similarly situated in all relevant aspects. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002). However,

Plaintiff is not required to demonstrate "exact correlation." *Id*.

Yantis has identified three male corrections officers that she believes had similar contact with former inmates and yet received no disciplinary action. First, Plaintiff asserts that Corrections Officer Adam Slusher "partied with an ex-inmate because his neighbors were the ex-inmate's parents." (Doc. 8 at 51). Yantis also alleges that Corrections Officer Home Yates's stepson is a former inmate. (*Id*. at 52). Finally, Yantis asserts that Deputy Warden Cadogen's wife runs a homeless shelter frequented by former SOCF inmates. (*Id*. at 53-54). However, all three of Plaintiff's asserted comparators differ from Plaintiff in significant respects. Both Slusher and Yates filled out the required staff nexus form and therefore complied with ODRC policy. (Doc. 10 at 13-14). With respect to Cadogen, Plaintiff alleges that his wife has contact with former inmates, which is not prohibited by ODRC policy. (*Id.*). The Court finds that adherence to the employer's policy is a substantial difference, and Yantis has therefore failed to demonstrate that she was treated differently than a similarly situated male employee.

Nevertheless, Plaintiff also alleges that she was replaced by a male corrections officer (*see* Doc. 15 a t 12; Doc. 15, Ex. 3 at ¶ 3), and Defendants provide no evidence in response to this allegation. Accordingly, the Court finds that Plaintiff has therefore established a genuine issue of material fact with regard to the fourth prong of the *prima facie* test.

### b.    Defendants' Legitimate Non-Discriminatory Reason

Because Plaintiff has set forth a *prima facie* case for gender discrimination, the

burden shifts to the Defendants to offer evidence of a legitimate, non-discriminatory

reason for the adverse employment action.  *Bryson v. Regis-Corp.*, 498 F.3d 561, 570 (6th

Cir. 2007).  Defendants must clearly set forth, through the introduction of admissible

evidence, reasons for their actions, which if believed by the trier of fact, would support a

finding that unlawful discrimination was not the cause of the employment action.  *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).  Nevertheless, this is merely a

burden of production, not of persuasion, and the employer's burden is satisfied if it

simply explains what it has done or produces evidence of legitimate nondiscriminatory

reasons.  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009); *Bd. Of Trs. Of*

*Keene State Coll. v. Sweeney*, 439 U.S. 24, 25, n.2 (1978).

Defendants have satisfied their burden.  SOCF and Morgan assert that Yantis was

terminated for violating ODRC policies prohibiting unauthorized relationships with

former inmates and requiring cooperation with internal ODRC investigations.  (Doc. 10 at

14).

### c.    Plaintiff's Evidence of Pretext

Once Defendant has set forth a legitimate non-discriminatory reason for the adverse

employment action, the burden then shifts back to Plaintiff to provide evidence that

Defendant's reason is a pretext for discrimination.  *Bryson v. Regis Corp.*, 498 F.3d 561,

570 (6th Cir. 2007). Plaintiff must produce evidence "tending to show" that Defendant's proffered reason for the adverse employment action was false. *Skrjanc. v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Such a showing of pretext may be accomplished by showing that the articulated reason (1) has no basis in fact; (2) did not actually motivate Defendant's conduct; or (3) was insufficient to warrant the challenged conduct. *Dewes v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). The Sixth Circuit has cautioned, however, that the courts should "avoid formalism" in the application of this test, "lest one lose the forest for the trees." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400, n. 4 (6th Cir. 2009). Pretext is a "commonsense inquiry" and at the summary judgment stage Plaintiff need only produce evidence from which the jury could reasonably doubt the employer's explanation. *Id*. Here, while Plaintiff admits that she violated the ODRC rules at issue (Doc. 8), she argues that her rule violations did not actually motivate her dismissal and the infractions were insufficient to warrant a dismissal. (Doc. 15 at 15).

Yantis argues that the real reason for her dismissal was her gender, her refusal to engage in sexual activity with her superiors, and her complaints of sexual harassment. (Doc. 15 at 13; Doc. 15, Ex. 1 at ¶ 30). However, Plaintiff has failed to provide any evidence to demonstrate a genuine issue of fact on that issue. Yantis makes assertions that "male co-workers were treated more favorably than the Plaintiff . . ." and that "male employees whose lunches are bothered by inmates are not accused of fraternization as she was." (Doc. 15 at 8, 13). But Yantis does not point to a single affidavit or exhibit to

-12-

support her assertions. A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Plaintiff has failed to meet her burden and has not established a genuine issue of material fact regarding her assertion that she was truly terminated because of her gender and Defendants' sexual harassment.

Finally, Plaintiff asserts that because the ODRC rule prohibiting unauthorized conduct with inmates includes progressive discipline, her first offense did not warrant termination. (Doc. 15 at 13). However, ODRC Rule 46 plainly states that removal is a possible sanction for a first offense. (Doc. 8, Ex. at D at 22). The ODRC Standards of Conduct also state that the appropriate discipline for each violation turns on the particular facts and conduct at issue, including aggravating or mitigating circumstances. (*Id*. at 9). Yantis has not set forth any evidence that the circumstances in this case did not warrant the discipline imposed. The Court therefore finds that Plaintiff is unable to establish a genuine issue of material fact concerning whether her action was insufficient to warrant termination.

### 3. Hostile Workplace

#### a. Exhaustion of Administrative Remedies

An employee alleging employment discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time after the alleged

wrongful act or acts. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) "The charge must be sufficiently precise to identify the parties, and to describe generally the action or practices complained of. As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Id.* (internal citations omitted). *See also* 42 U.S.C. § 2000e-5(f)(1).

In her Complaint, Plaintiff asserts two different time frames for her hostile work environment claims. Plaintiff first states that she has been subject to a hostile work environment "since or in March 2010 up until the present time" (Doc. 1 at ¶ 20); and Plaintiff then goes on to state that "During her employment with defendants plaintiff has further been subjected to sexual harassment and other embarrassing and humiliating terms and conditions of employment based upon her sex, including but not limited to being called derogatory language and vulgar epithets by male employees based upon plaintiff's sex and being threatened with the loss of employment for her complaints of discrimination." (Doc. 1 at ¶ 21(B)).

Plaintiff's first EEOC charge, filed April 13, 2010, makes allegations that Warden Morgan's conduct created a hostile work environment from "April 8, 2010 and continuing"; there is no mention of any conduct occurring prior to that date. (Doc. 8, Ex. P). Accordingly, the Court finds that Plaintiff has failed to exhaust her administrative remedies regarding claims of a hostile work environment regarding conduct occurring prior to April 8, 2010.

### b.    Merits of the Hostile Work Environment Claim

To establish a *prima facie* case of hostile work environment based on sex, Yantis must demonstrate that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is vicariously liable. *See Clark v. UPS*, 400 F.3d 341, 347 (6th Cir. 2005).

The Court finds that Plaintiff is unable to establish a genuine issue of material fact with regard to the *prima facie* case for a hostile work environment claim.  Plaintiff can point to no evidence, other than her own inferences, that Warden Morgan's comments to her were based on her sex.  However, assuming *arguendo*, that Plaintiff could establish such, Plaintiff is also unable to demonstrate that his comments created a hostile work environment.

A hostile work environment exits where workplace discrimination is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Oncale v. Sundowner Offshore Services, Inc.*, 523, U.S. 75, 78 (1998).  The hostility must be demonstrated both objectively and subjectively.  In making an objective assessment, the Court must look to the totality of the circumstances, including the frequency of the conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work performance. *Id.  Harris v. Forklift Systems, Inc*. 510 U.S. 17, 21-22 (1993).  To show

that an environment is subjectively hostile, the employee must demonstrate that the harassment made it more difficult to do her job. *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1998).

Plaintiff has failed to satisfy either component. Yantis was placed on administrative leave immediately following her conversation with the warden. She never returned to work after April 8, and is therefore unable to show that Morgan's comments made subjectively it more difficult for her to perform her job. Additionally, there is no evidence that Warden Morgan's comments were objectively severe or pervasive; Morgan simply informed Plaintiff that he was initiating disciplinary action. .

Therefore, the Court finds that Plaintiff is unable to establish a genuine issue of material fact regarding her hostile work environment claims, and Defendant is entitled to summary judgment.

### 3. Retaliation Claims

Plaintiff makes two allegations with regard to retaliatory activity: (1) that her unfavorable June 2010 performance review was in retaliation for her first EEOC complaint alleging gender discrimination; and (2) that she was fired in retaliation for her EEOC complaint. To establish a claim of retaliation for engaging in protected activity under Title VII, Plaintiff must show that: (1) she engaged in protected activity; (2) her exercise of civil rights was known to the Defendant; (3) she was the subject of adverse employment action; and (4) a causal link existed between the protected activity and the adverse action. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). Defendants do not

dispute that Plaintiff engaged in protected activity by filing two EEOC complaints, nor that Defendant was aware of those complaints, nor that her termination constituted an adverse employment action.

To establish a *prima facie* case for retaliation, Plaintiff must demonstrate that she suffered an adverse employment action. While Defendants do not dispute that Plaintiff's termination constituted an adverse employment action, Plaintiff also contends that her negative performance evaluation constituted an adverse employment action, which Defendants deny.

Actions constitute "adverse employment actions" for retaliation claims if they would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Sixth Circuit has held that as with discrimination claims, performance evaluations constitute adverse employment actions only if they have an effect on wages or salary. *See Halfacre v. Home Depot, U.S.A., Inc.*, 221 Fed. App'x 424, 433 (6th Cir. 2007). As discussed, *supra*, the mere temporal proximity between the evaluation and Plaintiff's termination is insufficient to establish an adverse effect.

However, Plaintiff may still establish a *prima facie* case if she is able to demonstrate that there was a causal link between her EEOC complaints and her termination. To show a causal connection, Yantis must "proffer evidence to raise the inference that [her] protected activity was the likely reason for the adverse action."

*Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("a plaintiff must produce sufficient evidence from which an inference could be drawn that an adverse action would not have been taken had the plaintiff not filed a discrimination action"). Temporal proximity alone is not sufficient to establish causation; such proximity must be "coupled with other indicia of retaliatory conduct" to give rise to a causal inference. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

Defendants had expressed concern with Yantis's conduct prior to the filing of the EEOC complaint. Plaintiff was first counseled regarding her behavior around inmates in March 2010. (Doc. 8 at 46-48). She was placed on administrative leave on April 8, 2010 due to the allegations of misconduct involving inmate Dean. (Doc. 8, Ex. N at 8). She filed her first EEOC complaint five days later, on April 13, 2010. (Doc. 8, Ex. P). Because the Defendants began the disciplinary process prior to Yantis filing the EEOC complaint, her termination after the filing of the complaint does not support an inference of a retaliatory motive. *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 402 (6th Cir. 2010). Plaintiff has offered no other evidence that her termination was in retaliation for her April 2010 EEOC complaint, and the Court therefore finds that she has failed to establish a *prima facie* case with respect to her retaliation claims.

Because Plaintiff is unable to set forth a genuine issue of fact concerning her *prima facie* case, Defendant is entitled to summary judgment on Plaintiff's claims of retaliation.

## IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (Doc. 10) is hereby

**GRANTED,** the Clerk shall enter judgment accordingly by separate entry, and this case

is **CLOSED**.

**IT IS SO ORDERED.**

Date: 7/23/12                                                    *s/ Timothy S. Black*
                                                                Timothy S. Black
                                                                United States District Judge